**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Katherine Greene,<br><br>                              Plaintiff,<br><br>          -v-<br><br>Northwell Health Inc., et al.,<br><br>                              Defendant. | 2:23-cv-4846<br>(NJC) (LGD) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Katherine Greene ("Greene") brings this action against her former employers, Northwell Health, Inc. ("Northwell") and Orlin & Cohen Orthopedic Associates, LLP dba Orlin & Cohen Orthopedic Group ("Orlin & Cohen" and collectively, "Healthcare Employer Defendants"), and several Orlin & Cohen officers in their individual and official capacities: Michael Passet, the current Chief Operating Officer; Win Hayes, the former Chief Operating Officer; and Sarah Rubensohn, the Director of Human Resources (collectively, "Individual Defendants," together with Healthcare Employers Defendants, "Defendants"). (Am. Compl., ECF No. 13.) Greene alleges that the termination of her employment for failure to comply with COVID-19 vaccination requirements constituted religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, New York Executive Law § 290–301 ("NYSHRL"), and the New York City Administrative Code, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"). Greene seeks compensatory and punitive damages and a declaratory judgment that Defendants' actions were unlawful and in willful violation of federal, state, and city laws. (Am. Compl. at 15.)

Before me is Defendants' Motion to Dismiss all claims in the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot. to Dismiss, ECF No. 19.) For the reasons set forth below, Defendants' Motion to Dismiss is granted in its entirety and the Amended Complaint is dismissed.

## FACTS

To evaluate the Defendants' Motion to Dismiss, I accept as true all well-pled allegations in the Amended Complaint and draw all reasonable inferences in favor of Greene. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).[1]

Northwell operates a healthcare and hospital system in the New York City area. (Am. Compl. ¶ 18.) Orlin & Cohen is an orthopedic medical practice in Long Island and an affiliate of Northwell. (*Id.* ¶¶ 12, 19.) Orlin & Cohen and Northwell maintain a co-employment arrangement and share the same policies, work requirements, workplace mandates, and human resources policies. (*Id.* ¶¶ 22–23.)

Greene is a former employee of the Healthcare Employer Defendants. (*Id.* ¶ 24.) On February 1, 2021, Greene began working for Orlin & Cohen and Northwell as an Office Manager. (*Id.*) Greene practices Christianity. (*Id.* ¶ 25.) At some point during her employment, she "disclosed to Defendant that she was a person of faith." (*Id.* ¶ 26.)

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, citations, footnotes, and alterations. Excerpts from the Amended Complaint and the parties' submissions are reproduced here exactly as they appear in the original documents. Errors in spelling, punctuation or grammar will not be corrected or noted.

I.      **New York's Emergency COVID-19 Vaccine Mandate**

On August 26, 2021, the New York State Department of Health ("Department of

Health") issued an emergency rule directing healthcare entities[2] to "continuously require" certain

employees to be fully vaccinated against COVID-19. 10 N.Y. Comp. Codes R. & Regs. Tit. 10,

§ 2.61(c) (2021) (repealed Oct. 4, 2023) ("N.Y.C.R.R." and "Section 2.61").[3] Section 2.61

required the vaccination of:

> all persons employed or affiliated with a covered entity, whether paid or unpaid,
> including but not limited to employees, members of the medical and nursing staff,
> contract staff, students, and volunteers, who engage in activities such that if they
> were infected with COVID-19, they could potentially expose other covered
> personnel, patients or residents to the disease.

10 N.Y.C.R.R. § 2.61(a)(2); *see also id.* § 2.61(c). Section 2.61 required covered

personnel at general hospitals and nursing homes to receive the first vaccine dose by

September 27, 2021, and those at other facilities covered by the Rule to receive the first

dose by October 7, 2021. *Id.* § 2.61(c).

Section 2.61 provided for certain medical exemptions to the vaccination requirement. *See*

10 N.Y.C.R.R. § 2.61(d)(1). It did not, however, contain any "exemption for personnel who

---

[2] The entities covered by this rule includes hospitals, as defined under New York Public Health
Law ("N.Y. Pub. Health L.") § 2801. *See* N.Y.C.R.R. § 2.61.

[3] "It is well established that a district court may rely on matters of public record in deciding a
motion to dismiss under Rule 12(b)(6), including case law and statutes." *Williams v. N.Y.C.
Hous. Auth.*, 816 F. App'x 532, 534 (2d Cir. 2020) (citing *Pani v. Empire Blue Cross Blue
Shield*, 152 F.3d 67, 75 (2d Cir. 1998)); *Clark v. Hanley*, 89 F.4th 78, 93 (2d Cir. 2023)
(recognizing that, at the motion to dismiss stage, a court may consider "matters of which judicial
notice may be taken"). I take judicial notice of Section 2.61 because this regulation is in the
public record and because Greene relied upon this regulation in crafting her Amended
Complaint. (*See, e.g.*, Am. Compl. ¶¶ 41–42 (citing 10 N.Y.C.R.R. § 2.61).) I also take judicial
notice of New York Public Health Law §§ 12 and 2801, which are New York State statutes and
matters of public record.

oppose vaccination on religious or any other grounds not covered by the medical exemption." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 274 (2d Cir. 2021) (*"We The Patriots I"*), *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) ("*We The Patriots II*"). Section 2.61 did not prohibit employers from providing these employees "with a reasonable accommodation *that removes the individual from the scope of the Rule*." *We The Patriots II*, 17 F.4th at 370.

## II.    The Healthcare Employer Defendants' Vaccination Requirement

In August 2021, the Healthcare Employer Defendants announced that all employees would be required to get the COVID-19 vaccine. (Am. Compl. ¶ 29.) On August 10, 2021, Defendant Sarah Rubensohn ("Rubensohn"), Orlin & Cohen's Director of Human Resources, emailed Greene along with a group of unvaccinated employees with questions regarding their status and the policies that would apply to unvaccinated employees, including "weekly PCR testing and masks." (*Id.* ¶ 30.)

## III.   Greene's Request for a Religious Exemption[4]

The Amended Complaint alleges that Greene "maintains sincerely held religious beliefs that do not allow her to be vaccinated" and that "due to [these] sincerely held religious beliefs," Greene "is unvaccinated from the COVID-19 virus and refuses to take the vaccine." (*Id.* ¶¶ 27–28.) Greene is willing to "use a mask and submit to weekly testing as a feasible alternative." (*Id.* ¶ 28.)

---

[4] The Amended Complaint uses the terms "exemption" and "accommodation" interchangeably. (Am. Compl. ¶¶ 36–38.) As addressed *infra* Discussion Section IV(B)(b), while the Amended Complaint occasionally describes Greene's request as a request for an "accommodation," Greene asked Defendants to provide her with only one type of accommodation: a religious exemption to the vaccination requirement. *See* Am. Compl. ¶¶ 35–39, 44; *see D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023). At oral argument, Greene's counsel acknowledged that both terms are used "interchangeably" throughout the Amended Complaint. (Oral Arg. at 28:40, Sept. 19, 2024.)

In August and September 2021, Greene communicated with the human resources department of the Healthcare Employer Defendants regarding the vaccination requirement. (*Id.* ¶ 34.) At some point in time, Greene "informed Defendants that she would not receive the vaccine due to her sincerely held religious beliefs specifically the use of aborted fetal cells in the development of the vaccines." (*Id.* ¶ 35.) Around September 3, 2021, Greene submitted a request to the Healthcare Employer Defendants for a "religious accommodation" from the vaccination requirement. (*Id.* ¶ 36.) Greene explained "that aborted fetal cells used in the development testing of the COVID19 vaccine interfered with her Christian religious beliefs as well as her health and wellbeing." (*Id.* ¶ 39.) Greene submitted a letter in support of her "request for religious exemption"[5] from her pastor, J.L. Broughton, who provided "a theological basis and scriptural specificity for [Greene's] sincerely held religious beliefs." (*Id.* ¶ 37.) Greene told the Healthcare Employer Defendants that she "would wear a mask, social distance and submit weekly COVID-19 tests if the exemption was granted." (*Id.* ¶ 38.)

On September 9, 2021, Rubensohn informed Greene via email that her religious exemption had been denied because the Department of Health "has indicated, consistent with the Vaccinate *sic* Mandate, that we are unable to recognize any religious exemptions to the mandate for healthcare employees." (*Id.* ¶ 40.)

## IV.    Order Temporarily Enjoining Section 2.61

On September 14, 2021, a district judge in the Northern District of New York issued a temporary restraining order that enjoined the State from enforcing Section 2.61 to require that

---

[5] Like the Amended Complaint, Greene's correspondence with the Healthcare Employer Defendants uses the terms "religious exemption" and "religious accommodation" to refer to her request. I understand Greene to be describing one single request and using these terms interchangeably. (*See* Am. Compl. ¶¶ 36–39.)

employers deny exemptions to the COVID-19 vaccination requirement based on religious

beliefs. *See Dr. A. v. Hochul*, No. 21-cv-1009, 2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021).

**V.      Greene's Second Request for a Religious Exemption**

On September 16, 2021, Greene reached out to the human resources department of the

Healthcare Employer Defendants about the status of her religious accommodation request and

resubmitted the request. (*Id.* ¶ 44.) On September 21, 2021, Northwell's human resources

department sent Greene a letter about her "Accommodation Status." (*Id.* ¶ 45.) The letter

acknowledged that on September 14, 2021, a New York court had issued an order temporarily

restraining the Department of Health from enforcing Section 2.61's prohibition on religious

exemptions to the COVID-19 vaccination requirement, but noted that "it is unknown whether the

court's temporary order will become permanent." (*Id.* ¶ 46.) The letter explained that while

Northwell "underst[oo]d the rationale behind" Greene's request for a religious exemption, it

"must also be mindful of the State's mandate as well as [Northwell's] operational concerns,

including the safety of Northwell's patients, visitors and team members." (*Id.*) The letter stated

that Northwell had reviewed Green's religious exemption request "in advance of the Court's

ruling in the event that Northwell is ultimately permitted to consider such religious exemption"

in order to "provide clarity to you while we await the court's final determination and in an effort

to address operational concerns." (*Id.*)

The letter continued by explaining that in the event that Northwell could consider

Greene's religious exemption request, Northwell had determined that her request "must be

denied as it would create an undue hardship." (*Id.*) The letter reasoned that permitting Greene to

report to her position, which provides "direct patient care and/or has direct contact with the

general public," while unvaccinated posed an "unacceptable" threat to the health and safety of

patients, co-workers, and visitors. (*Id.*) According to the letter, "there is no alternative arrangement made that would allow [Greene] to perform the essential functions of [her] position while unvaccinated without creating an undue hardship." (*Id.*) The letter concluded by stating that "consistent with our requirements of all other Northwell employees," Greene was "required to receive a first dose of the COVID-19 vaccine th[at] week as a condition of continued employment" and that if she failed to do so, her employment would be terminated at the end of the week, on September 24, 2024. (*Id.*)

## VI.     Greene's Termination

The Healthcare Employer Defendants' policy required that employees take their first dose of the COVID-19 vaccine by September 24, 2021. (*Id.* ¶ 53.) On September 24, 2021, Defendant Win Hayes ("Hayes"), the then-Chief Operating Officer of Orlin & Cohen, sent Greene a letter on Northwell letterhead, which stated that September 24, 2021 would be her last day of employment because the Healthcare Employer Defendants' records indicated that Greene had not taken steps to receive the first dose of the COVID-19 vaccine as required. (*Id.* ¶ 55.) That same day, Alfred Varrichio, Orlin & Cohen's Practice Operation Manager, informed Greene that her employment was terminated and directed her to leave the facility. (*Id.* ¶ 54.) The Amended Complfaint alleges that, as of the date of the filing of the Amended Complaint on October 23, 2023, the Healthcare Employer Defendants "have failed to offer reinstatement of employment to [Greene]." (*Id.* ¶ 72.)

## VII.    Subsequent Litigation and Repeal of Section 2.61

On October 12, 2021, the Northern District of New York issued a preliminary injunction in *Dr. A v. Hochul*, which continued the injunction that barred New York State officials from enforcing Section 2.61 to require employers to deny religious exemptions from COVID-19

vaccination. 567 F. Supp. 3d 362 (N.D.N.Y. Oct. 12, 2021), *reversed and vacated by We The Patriots I*, 17 F.4th 266. On November 4, 2021, the Second Circuit reversed and vacated the Northern District of New York's preliminary injunction enjoining enforcement of Section 2.61. *We The Patriots I*, 17 F.4th 266 (citing *Dr. A*, 567 F. Supp. 3d 362).

On January 13, 2023, in *Medical Professionals for Informed Consent v. Bassett*, the Supreme Court in Onondaga County, New York, struck down Section 2.61, finding that the regulation was beyond the Department of Health's rule-making authority, violated the separation of powers doctrine, and was arbitrary and capricious. 185 N.Y.S.3d 578, 582, 585–86 (N.Y. Sup. Ct. 2023).

On February 27, 2023, the Appellate Division of the New York Supreme Court, Fourth Department, stayed the enforcement of the ruling in *Bassett* during the pendency of its appeal. Order, *Med. Prof. for Informed Consent, Inc. v. Bassett*, No. 23-161 (N.Y. App. Div. Feb. 27, 2023), NYSCEF Doc. No. 6. On October 4, 2023, while that appeal was pending, the Department of Health repealed Section 2.61. 45 N.Y. Reg. 22 (Oct. 4, 2023).[6]

## VIII.   Allegations about the Purpose and Efficacy of the COVID-19 Vaccination Requirement

The Amended Complaint alleges that while the Healthcare Employer Defendants' COVID-19 vaccination requirement was "perhaps well-meaning" (Am. Compl. ¶ 56), it "did not achieve its desired effect of protecting Defendants' patients and employees because the vaccines do not stop the transmission or spread of the COVID-19 virus" (*id.* ¶ 52). To support this allegation, the Amended Complaint alleges that:

---

[6] On October 6, 2023, the appeal of *Bassett* was dismissed as moot because Section 2.61 had been repealed. *See Med. Prof. for Informed Consent, Inc. v. Bassett*, No. 23-161 (N.Y. App. Div. Oct. 6, 2023).

- "the vaccines did not work as they were promoted" (*id.* ¶ 50);
- as of June 2023, "the U.S. Food and Drug Administration has banned the Johnson and Johnson COVID-19 vaccine due to dangerous side effects" (*id.* ¶ 51);
- "COVID vaccines were intended to protect against the original strain" (*id.* ¶ 73);
- "Vaccines do not provide protection against the current strain; which has mutated numerous times and will continue to do so" (*id.* ¶ 74);
- "vaccinated and unvaccinated individuals can contract and spread COVID-19 at the same rate" (*id.* ¶¶ 49, 75); and
- "[n]o current Vaccine or (bivalent booster) can prevent the transmission of the COVID-19 virus or variant" (*id.* ¶ 76).

The Amended Complaint alleges that the Healthcare Employer Defendants' vaccination requirement "resulted in [Greene]'s inability to continue employment at [Orlin & Cohen] due to Defendants' hyperbolic and wholly unfounded fear of having [Greene] in as an unvaccinated employee." (*Id.* ¶ 56.) The Amended Complaint further alleges "upon information and belief" that the Healthcare Employer Defendants "had professionally trained and qualified experts within the organization that knew or should have known that the COVID-19 vaccines were medically ineffective and did not work as promoted (i.e. preventing contraction of and transmission of COVID-19)." (*Id.* ¶ 70.)

## PROCEDURAL HISTORY

Greene filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and on March 30, 2023, the EEOC issued Greene a Notice of Right to Sue. (Am. Compl. ¶¶ 7–8.)[7] On June 28, 2023, Greene initiated this action by filing the original complaint. (ECF No. 1.) On October 23, 2023, Greene filed an Amended Complaint, which is the operative complaint in this action. (Am. Compl., ECF No. 13.)

---

[7] Defendants do not contest that Greene exhausted her administrative remedies. (*See generally* Defs.' Br., ECF No. 19-3.)

The Amended Complaint brings three types of religious discrimination claims. First, Greene brings Title VII claims against the Healthcare Employer Defendants, alleging "discrimination based on religion, den[ial] [of] Plaintiff's religious accommodation and . . . a hostile work environment." (*Id.* ¶¶ 77–80.) Second, the Amended Complaint brings a religious discrimination claim under the NYSHRL against all Defendants. (*Id.* ¶¶ 81–85.) Third, it brings a religious discrimination claim under the NYCHRL against all Defendants. (*Id.* ¶¶ 86–90.)

On November 6, 2023, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss. (ECF No. 14.) After reviewing Greene's opposition, I issued a briefing schedule for Defendants' anticipated motion, which I later modified upon Defendants' request for an extension of time. (ECF Nos. 14–15; Elec. Order, Dec. 5, 2023; ECF No. 18; Elec. Order, Dec. 12, 2023.) Defendants were required to serve their motion by January 19, 2024; Greene was required to serve any opposition by February 23, 2024; and Defendants were required to serve any reply and to file the fully briefed motion by March 8, 2024. (Elec. Order, Dec. 12, 2023.)

On January 19, 2024, Defendants timely filed their Motion to Dismiss the Amended Complaint (ECF No. 19) and supporting brief (Defs.' Br., ECF No. 19-3). On February 28, 2024, five days after the February 23, 2024 deadline, Greene filed her opposition brief. (Pl.'s Opp'n, ECF No. 20.) On March 8, 2024, Defendants timely filed their reply brief. (Defs.' Reply, ECF No. 22.)

On September 12, 2024, I ordered the parties to confer and provide a submission to the Court clarifying whether Greene seeks injunctive and/or declaratory relief on any of her claims, the specific injunctive and/or declaratory relief sought, and the specific allegations of the Amended Complaint supporting standing to seek any such relief. (Elec. Order, Sept. 12, 2024.)

In a letter response, Greene stated that "Plaintiff does not seek injunctive relief" and that "to the extent Plaintiff seeks declaratory relief, Plaintiff only seeks a declaration in the form of judgment for the Plaintiff at trial for the reasons set forth in her Opposition Brief." (ECF No. 25.) During oral argument on September 19, 2024, the parties addressed the issue of Greene's standing to pursue declaratory relief, among other things. (Oral Arg., Sept. 19, 2024.)

**JURISDICTION**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because one of Greene's claims arises under a federal statute, 42 U.S.C. § 2000e-2. The Court has supplemental jurisdiction over the state and local law claims alleged in the Amended Complaint under 28 U.S.C. § 1367(a) because those claims are part of the same case or controversy as the federal claim.

Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391(b)(2) because the alleged events giving rise to Greene's claims took place in the Eastern District of New York. (Am. Compl. ¶ 5.)

**DISCUSSION**

**I.      Greene's Untimely Brief**

Defendants argue that this Court should disregard Greene's opposition brief because it was served five days late and Greene failed to request an extension of time in advance and to provide any reason for the delay. (Defs.' Reply at 2.) Courts in this Circuit have found that a court may disregard an untimely brief filed in opposition to a motion. Defendants rely on *Jingle Kids USA, LLC v. In Colour Capital, Inc.*, where the court found that it "could simply decline to consider" plaintiff's untimely opposition to defendants' motion to dismiss because it was submitted nearly three months late and because plaintiff was represented by counsel, who failed

to provide a reason for the delay. No. 22-cv-7089, 2023 WL 6392725, at *2 (S.D.N.Y. Oct. 2, 2023).[8] In *Watson v. Geithner*, the Second Circuit affirmed by summary order the district court's decision to disregard an untimely response to a summary judgment motion given that the court had notified the late-filing party of the consequences of failing to respond to the motion and gave that party an extension of time to respond. 355 F. App'x 482, 483 (2d Cir. 2009).

Given the circumstances of this case, I consider Greene's brief, even though it was filed late. While Greene is represented by counsel and failed to provide any reason for the late submission or to request an extension of time prior to the deadline for filing her brief, the delay of five days was minimal when compared with the nearly three-month delay in *Jingle Kids*. Moreover, unlike the court in *Watson*, I did not warn Greene of the consequences of failing to timely serve her brief. *See Alvarez v. Experian Info. Sols., Inc.*, 661 F. Supp. 3d 18, 24 (E.D.N.Y. 2023) (considering an untimely response to a motion to strike arguments raised in a reply brief), *aff'd*, No. 19-cv-3343, 2024 WL 3643269 (E.D.N.Y. Aug. 2, 2024); *cf. Jingle* Kids, 2023 WL 6392725, at *2; *Watson*, 355 F. App'x at 483.

## II.    Article III Standing

The Amended Complaint explicitly seeks compensatory and punitive damages for the alleged violation of Greene's rights under Title VII and the NYSHRL and also includes two references to equitable relief. (Am. Compl. ¶¶ 80, 85; *id.* at 1, 15). The first paragraphs of the pleading frame this action as "a civil action for damages and equitable relief" and state: "Plaintiff seeks monetary relief including, but not limited to: compensatory and punitive damages; attorney's fees and the costs of this action; together with any and all other appropriate legal and

---

[8] The court in *Jingle Kids* declined to disregard the untimely brief, however, because in that brief, the plaintiff withdrew counterclaims, which the motion in question had sought to dismiss. 2023 WL 6392725, at *2.

*equitable relief* pursuant to applicable state and federal law." (*Id.* ¶¶ 1–2 (emphasis supplied).) Under the heading "Prayer for Relief," the Amended Complaint "demands . . . [a] judgment [against Defendant] declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned federal; and state and city laws . . . ." (*Id.* at 15.) Because the Amended Complaint fails to describe the equitable relief that Greene seeks, this Court issued a September 12, 2024 Order requiring clarification. In response, Greene's counsel confirmed that Greene does not seek injunctive relief, but does seek declaratory relief on all three claims pled in the Amended Complaint. (ECF No. 25.) In response to questioning at oral argument about the precise declaration sought and whether Greene has standing to pursue such relief, Greene's counsel stated that she seeks a "declaration after trial . . . that the [Defendants'] denial of the religious accommodation was unlawful" under Title VII, the NYSHRL, and the NYCHRL. (Oral Arg. at 5:38, Sept. 19, 2024.) According to Greene's counsel, "the exact words" of the declaration sought is as follows: "The denial of the religious accommodation was unlawful under Title VII and . . . under the three laws that we alleged." (*Id.*)

A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005); *Plante v. Dake*, 621 F. App'x 67, 69 (2d Cir. 2015). "Because the question of standing goes to the constitutional limitations on the judicial Power of the United States," courts "are entitled at any time sua sponte to delve into the issue of standing even if defendants do not raise the issue." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021). In order to establish Article III standing, a plaintiff must show: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants'

challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Soule v. Conn. Ass'n of Sch.*, 90 F.4th 34, 45 (2d Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A "plaintiff[] must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)). Where a "plaintiff[] seek[s] . . . declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021). "Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)).

The Amended Complaint alleges facts to support Greene's standing to seek damages for claims under Title VII, the NYSHRL, and the NYCHRL. Greene has alleged an injury in fact that is traceable to Defendants' alleged conduct—the Healthcare Employer Defendants' termination of her employment as an Office Manager on September 24, 2021. Am. Compl. ¶ 55; *see Soule*, 90 F.4th at 45. If Greene were to prevail on her Title VII, NYSHRL, and NYCHRL claims, the requested damages would likely redress her injury by providing compensation for alleged harms and, with respect to punitive damages, by deterring future unlawful conduct. *See id.* at 47 ("To satisfy the redressability element of Article III standing, a plaintiff must show that it is 'likely, as opposed to merely speculative, that the alleged injury will be redressed by a favorable decision.'") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

The Amended Complaint fails, however, to allege any facts that support Greene's standing to seek declaratory relief for any claims. Most significantly, it does not allege that Greene continues to sustain any injury or that she is likely to be injured again in the future by

Defendants' alleged unlawful conduct. As the parties confirmed at oral argument, Greene is no longer employed by the Healthcare Employer Defendants and does not live in New York.[9] The Amended Complaint does not allege that, at any point after her termination, Greene asked Defendants for the opportunity to rejoin Northwell and Orlin & Cohen as an Office Manager or applied to work for Defendants in any capacity. Moreover, Section 2.61 has been repealed, 45 N.Y. Reg. 22 (Oct. 4, 2023), and the Amended Complaint does not allege that Defendants maintain the same or a similar COVID-19 vaccination requirement for employees in the role Greene performed prior to her termination, or that Defendants would deny a request for religious accommodation from any such policy. The Amended Complaint does allege that "Defendants have failed to offer reinstatement of employment to Plaintiff" (Am. Compl. ¶ 72), but even drawing all inferences in favor of Greene, this allegation alone does not plausibly allege any current or future injury that would support Article III standing to seek declaratory relief.

This case is therefore similar to *Dorce*, 2 F.4th 82, where the Second Circuit affirmed the dismissal of declaratory relief claims due to plaintiffs' failure to allege ongoing or future harm that would support Article III standing. In *Dorce*, the plaintiffs challenged a local law that authorized New York City to transfer ownership of foreclosed properties "free of charge to designated partners, who develop and manage the properties" and sought a declaration that the local law was unconstitutional. *Dorce*, 2 F.4th at 87, 95. Although the plaintiffs alleged that properties they had owned were foreclosed upon in rem and transferred to a third party pursuant to this local law, they failed to "demonstrate[] that they will be subject to future harm" because they "could not show that they owned property that was likely to be transferred in the future"

---

[9] Greene's counsel represented that Greene has "relocated to Florida," where "this sort of [COVID-19 vaccination] mandate is not an issue." (Oral Arg. at 11:12, Sept. 19, 2024.)

under the law. *Id.* at 93, 95–96. Thus, while the plaintiffs had alleged past harms, the Second Circuit held that they lacked standing to seek declaratory relief.

Like the *Dorce* plaintiffs, Greene has alleged that she was injured in the past by Defendants' challenged conduct—specifically, the Healthcare Employer Defendants' decision to terminate her employment—but has not alleged any current injury or facts supporting the conclusion that she faces a substantial risk of future injury or any future injury that is certainly impending. *Id.* at 95 ("Such an allegation of future injury will be sufficient only if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur.").

Greene makes two arguments in support of her assertion of Article III standing to pursue declaratory relief, both of which are unpersuasive. First, at oral argument, Greene's counsel argued, for the first time, that Greene's "religious rights were—are continuing to be violated" because the termination of her employment with the Healthcare Employer Defendants and Northwell's September 24, 2021 letter communicating the termination decision have left a "mark on her employment record that has hindered . . . future employment in some respects to . . . being fired for some sort of . . . lack of qualification for a job . . . ." (Oral Arg. at 4:38, 4:48, Sept. 19, 2024.) The Amended Complaint, however, does not allege that Greene applied for any positions following the Healthcare Employer Defendants' termination of her employment with them, that any potential employers have seen or have access to the Northwell September 24, 2021 letter or any other records indicating that Greene's employment was terminated for noncompliance with a requirement to be vaccinated against COVID-19, or that Greene has experienced any trouble obtaining employment after the end of her employment with the Healthcare Employer Defendants. (*See generally* Am. Compl.) Nor does the Amended Complaint allege that the Healthcare Employer Defendants would inform any potential employer that Greene was

16

terminated for failing to comply with a requirement that employees in her role be vaccinated against COVID-19. (*See id.*) Greene's counsel conceded that the Amended Complaint does not include any such factual allegations[10] and even acknowledged that in the Amended Complaint, "we haven't gone on to articulate future harm for standing purposes . . . ." (Oral Arg. at 5:15, Sept. 19, 2024.)[11]

Second, at oral argument, Greene's counsel also argued that Greene has suffered emotional distress as a result of the termination of her employment with the Healthcare Employer Defendants, and that such harm provides her standing to sue for a declaration that the denial of her requested religious accommodation in the past was unlawful under federal, state, and local law. (*Id.* at 15:30–16:05.) This argument fails. The Amended Complaint does not allege that Greene is experiencing current emotional distress or that there is a substantial risk that she will suffer future emotional distress, much less that any future emotional distress that is

---

[10] Greene's counsel stated at oral argument, "we don't allege the [employment] records." (Oral Arg. at 10:28, Sept. 19, 2024.) When asked whether the Amended Complaint alleges that the September 24, 2021 Northwell letter terminating Greene's employment is shared with any potential future employers, counsel responded, "[N]o, nothing like that." (*Id.* at 10:50–11:00.)

[11] Greene's counsel argued that this theory of injury is similar to the injury the Second Circuit recognized in *Soule*, 90 F.4th 34 (Oral Arg., Sept. 19, 2024). In *Soule*, the plaintiffs were a group of cisgender high school girls who challenged a high school athletic conference's policy that permitted transgender girls to compete in track and field competitions against cisgender girls under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* 90 F.4th at 41–43. The Second Circuit held that the plaintiffs had standing to seek an injunction requiring corrections to track and field records and titles awarded to specific transgender athletes who competed against the plaintiffs because "each plaintiff alleged at least one specific instance when she allegedly raced—and finished behind—a girl who is transgender" and that, but for the challenged policy, the plaintiffs would have won their respective races. *Id.* at 46. Unlike in *Soule*, however, the Amended Complaint is devoid of any factual allegations that support the assertion made by Greene's attorney for the first time at oral argument: that records of the Healthcare Employer Defendants' termination of her employment due to her refusal to become vaccinated against COVID-19 are causing Greene current injury or are likely to cause future injury that is certainly impending or for which there is a substantial risk of future harm.

"certainly impending." *Dorce*, 2 F.4th at 95 (citing *Susan B. Anthony List*, 573 U.S. at 158). Even if the Amended Complaint included such allegations, "[t]he emotional consequences of a prior act simply are not a sufficient basis for [equitable relief] absent a real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983).

Finally, Greene seeks a declaration that Defendants' past conduct was unconstitutional—relief that stands in contrast to the prospective nature of relief in the form of a declaratory judgment. Decisions of this Court have emphasized that declaratory relief is prospective in nature and that Article III standing to seek such relief must be based on allegations of current or future harm. *See, e.g.*, *Guan v. Mayorkas*, 530 F. Supp. 3d 237, 255 (E.D.N.Y. 2021).

Because the Amended Complaint fails to plausibly allege that Greene continues to be injured, that there is a substantial risk that future injury will occur, or that she faces threatened injury that is certainly impending, the Amended Complaint fails to establish Article III standing for Greene's claims for declaratory relief under Title VII, the NYSHRL and the NYCHRL. *See Dorce*, 2 F.4th at 95. Greene's declaratory relief claims are therefore dismissed without prejudice for lack of subject matter jurisdiction. *Merck-Medco Managed Care*, 433 F.3d at 198; *Plante*, 621 F. App'x at 69.

### III.   Greene's Abandoned Claims

Defendants argue that Greene has abandoned her Title VII hostile work environment claim, Title VII disparate treatment claim, and her religious discrimination claims brought under the NYSHRL and NYCHRL because she failed to address any of these claims in her brief opposing Defendants' Motion to Dismiss. (Defs.' Reply at 2–3.) I agree.

Where a party is represented, "a court may, when appropriate, infer from [that] party's partial opposition that relevant claims or defenses that are not defended have been abandoned."

*Farag v. XYZ Two Way Radio Serv., Inc.*, No. 22-1795, 2023 WL 2770219, at *2 (2d Cir. Apr. 4,

2023) (citing *Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014)); *see also Moll v.*

*Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024) (finding that a plaintiff "abandoned .

. . claims" that she failed to argue in response to a summary judgment motion). Accordingly, the

Second Circuit has "routinely affirmed the district court's dismissal of a plaintiff's claims when

the plaintiff did not discuss them in his opposition to the defendant's motion to dismiss." *Farag*,

2023 WL 2770219, at *2 (citing *Gross v. Rell*, 585 F.3d 72, 94 (2d Cir. 2009); *Elliot-Leach v.*

*N.Y.C. Dep't of Educ.*, 710 F. App'x 449, 450 n.1 (2d Cir. 2017)).

     In her opposition to Defendants' Motion to Dismiss, Greene argues that the Amended

Complaint sufficiently pleads a Title VII failure-to-accommodate claim, but fails to address in

any way Defendants' arguments for dismissal of the Title VII hostile work environment claim,

Title VII religious discrimination claim, NYSHRL religious discrimination claim, and NYCHRL

religious discrimination claim. (*See* Pl.'s Opp'n at 4–6.)[12] By failing to address in her brief

Defendants' arguments for dismissal of these claims, Greene has abandoned them. *Farag*, 2023

---

[12] The only mention of the NYSHRL and NYCHRL claims appears in the "preliminary statement" of Greene's opposition brief as follows:

> Plaintiff opposes the . . . discrimination based on religion, Article 15 of the Executive law the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("CHRL") § 8-107 et seq., New York City Admin Code, Ch. 1- § 8-107, claims for religious discrimination / failure to accommodate.

(Pl.'s Opp'n at 1). Greene entirely fails to address the substance of the NYSHRL and NYCHRL claims in any way in her brief, much less to respond to Defendants' arguments for dismissal of these claims. (*See id.* at 2–7.) *See Ndemenoh v. Boudreau*, No. 20-cv-4492, 2023 WL 6122852, at *5 (S.D.N.Y. Sept. 19, 2023) ("Merely offering a 'conclusory assertion that the complaint ha[s] stated a claim for each and every cause of action' constitutes 'failure to meaningfully discuss' the opposing party's arguments supporting a finding of abandonment." (quoting *Farag*, 2023 WL 2770219, at *2)).

WL 2770219, at *2; *Moll*, 94 F.4th at 257. The abandoned claims are therefore dismissed with

prejudice. *See Farag*, 2023 WL 2770219, at *1–2 (affirming district court's dismissal of

abandoned claims with prejudice); *see also Digilytic Int'l FZE v. Alchemy Fin., Inc.*, No. 20-cv-

4650, 2024 WL 4008120, at *17 (S.D.N.Y. Aug. 30, 2024) (same).

 As discussed below, however, even if Greene had not abandoned these claims, the

Amended Complaint fails to sufficiently allege any Title VII claims, and because the Amended

Complaint fails to allege a claim over which this Court has original jurisdiction, I would decline

to exercise supplemental jurisdiction over the state and local claims.

**IV. Failure to State a Claim**

 Defendants argue that even if the Court considers the merits of Greene's claims, the

Amended Complaint has failed to state a cause of action for any of these claims: the Title VII

claims of religious discrimination, failure to accommodate, and hostile work environment against

the Healthcare Employer Defendants; and the religious discrimination claims under the

NYSHRL and NYCHRL against all Defendants. (*See* Defs.' Br.)[13] For the following reasons,

Greene has failed to state a cause of action under Title VII, and even if Greene had not

abandoned her state and local law claims, I would decline to exercise supplemental jurisdiction

over those claims.

 A. Rule 12(b)(6) Standard

 A complaint must plead sufficient facts to "state a claim to relief that is plausible on its

face." *Green v. Dep't of Educ.*, 16 F.4th 1076–77 (2d Cir. 2021) (quoting *Bell Atl. Corp. v.*

---

[13] Defendants also argue that none of the Individual Defendants can be held liable under the
NYSHRL or the NYCHRL. (Defs.' Br. at 20–21.) I do not reach this issue because, even if
Greene had not abandoned these state claims, I would decline to exercise jurisdiction over them.

*Twombly*, 550 U.S. 544, 570 (2007)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accepts all factual allegations as true" and "draws all reasonable inferences in favor of the plaintiffs . . . ." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 2682 (2024). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

### B. Legal Standards for Title VII Claims

Defendants argue that Greene has failed to state any Title VII claim against the Healthcare Employer Defendants, whether a claim for religious discrimination, for failure to reasonably accommodate Greene's religious beliefs, or for a hostile work environment. (Defs.' Br.)

Under Title VII, it is "unlawful for employers to discharge or otherwise to discriminate against any individual in his or her employment because of such individual's religion." *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e-2(a)(1)). At the pleading stage, a plaintiff can establish a Title VII claim of employment discrimination on the basis of religion by alleging

21

(1) that she "is a member of a protected class," (2) that she "was qualified" for her position, (3) that she "suffered an adverse employment action," and (4) facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023).

An employer may also be held liable under Title VII for failing "to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (citing 42 U.S.C. § 2000e(j)).[14] In order to plead a Title VII claim for failure to grant a religious accommodation, a plaintiff "must plausibly allege that (1) [the plaintiff] held a bona fide religious belief conflicting with an employment requirement; (2) [the plaintiff] informed [the] employers of this belief; and (3) [the plaintiff was] disciplined for failure to comply with the conflicting employment requirement." *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at \*2 (2d Cir. Nov. 17, 2023) (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).[15]

---

[14] "The statute defines 'religion' to include 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's religious observance or practice without undue hardship on the employer's business.'" *We The Patriots I*, 17 F.4th at 291 (quoting 42 U.S.C. § 2000e(j)).

[15] Defendants' brief suggests that to allege a *prima facie* claim for religious discrimination under Title VII, a plaintiff must establish the elements of a failure-to-accommodate claim *and* the elements of a discrimination claim. (*See* Defs.' Br. at 8.) Courts in the Second Circuit, however, have described failure-to-accommodate claims and religious discrimination claims as distinct claims under Title VII, with distinct elements that a plaintiff must establish at the pleading stage. *See Giurca v. Bon Secours Charity Health Sys.*, No. 23-200, 2024 WL 763388, at \*1 (2d Cir. Feb. 26, 2024), *petition for cert. docketed*, No. 24-48, 2024 WL 763388 (July 16, 2024); *Burke v. N.Y.C. Transit Auth.*, 758 F. App'x 192, 194 (2d Cir. 2019); *White v. Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015).

Once an employee establishes a *prime facie* case, the "employer must offer him or her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (quoting *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)). An employer may raise the defense of an undue hardship in a pre-answer motion to dismiss "if the defense appears on the face of the complaint." *D'Cunha*, 2023 WL 7986441, at *2 (citing *Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010)).

An employee can also bring a Title VII hostile work environment claim for religious discrimination. In order to bring a hostile work environment claim, a plaintiff must allege facts showing that their "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment." *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015); *see also Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 387 (2d Cir. 2020) (applying the same standard to a Title VII religious discrimination claim at the summary judgment stage). The Second Circuit has clarified that this standard "has both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the [plaintiff] must also subjectively perceive that environment to be abusive." *Rasmy*, 952 F.3d at 387; *see also Littlejohn*, 795 F.3d at 321. When determining whether a plaintiff has met this standard, a district court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn*, 795 F.3d at 321; *see also Rasmy*, 952 F.3d at 387.

### a. *Title VII Religious Discrimination Claim*

Defendants argue that the Amended Complaint fails to plausibly allege a Title VII

religious discrimination claim because the fact that Greene did not take the COVID-19 vaccine

rendered her unqualified for her position and because the Amended Complaint does not allege

facts supporting an inference of discriminatory intent. (Defs.' Br. at 8.) Greene does not address

this argument in her opposition brief. (*See* Pl.'s Opp'n.)[16]

As noted above, because Greene's opposition brief does not make any arguments in

support of the Title VII religious discrimination claim, she has abandoned this claim. *See supra*

Discussion Section III. Even if the claim were not abandoned, however, the Amended Complaint

would fail to sufficiently allege a Title VII religious discrimination claim because the fact that

Greene did not receive the COVID-19 vaccination left her unqualified for her position at

Northwell and Orlin & Cohen for the reasons discussed below.

To be qualified for a position under Title VII, an employee must satisfy "the criteria the

employer has specified for the position." *Sce v. City of New York*, No. 20-3954, 2022 WL

598974, at \*1 (2d Cir. Mar. 1, 2022) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123,

127 (2d Cir. 2004), *abrogated on other grounds in Muldrow v. City of St. Louis*, 601 U.S. 346

(2024)); *Martin v. City Univ. of New York*, No. 17-cv-6791, 2018 WL 6510805, at \*8 (S.D.N.Y.

Dec. 11, 2018) (to be qualified, "an employee must not only be capable of performing the work;

she must also satisfy the employer's conditions of employment.") (citing *Moore v. City of New*

---

[16] Greene asserts in a footnote in her opposition brief that because Section 2.61 "was
unconstitutional and violated New York's own administrative procedures act, . . . Defendants
could have granted Plaintiff an accommodation but chose not to due to the religious nature of her
request." (Pl.'s Opp'n at 6 n.1.) Greene points to no factual allegations in the Amended
Complaint supporting the conclusory statement that Defendants "chose" not to grant her request
for a religious exemption from the COVID-19 vaccination requirement because of the religious
nature of her request. *See infra* note 17.

*York*, No. 16-cv-7358, 2018 WL 1281809, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd*, No. 18-947, 754

F. App'x 407 (2d Cir. Nov. 2, 2018)). The Second Circuit has recognized that "vaccination is a

condition of employment in the healthcare field." *We The Patriots I*, 17 F.4th at 294; *see also*

*Kane v. de Blasio*, 623 F. Supp. 3d 339, 363 (S.D.N.Y. 2022) (collecting cases).

District courts in this Circuit have found that where a hospital imposed a COVID-19

vaccination requirement as an employment requirement and an employee failed to comply with

that requirement, the employee was not qualified for their position for purposes of bringing a

Title VII employment discrimination claim. *See Haczynska v. Mount Sinai Health Sys., Inc.*, No.

23-cv-3091, 2024 WL 3178639, at *11 n.15 (E.D.N.Y. June 26, 2024); *Lake v. HealthAlliance*

*Hosp. Broadway Campus*, No. 22-cv-656, 2024 WL 3226273, at *7 n.13 (N.D.N.Y. June 27,

2024); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023), *appeal*

*filed*, No. 23-7984 (2d. Cir. Jan. 28, 2022).

Like in those cases, the Amended Complaint here alleges that the Healthcare Employer

Defendants established an employment requirement for all employees to receive the first dose of

the COVID-19 vaccine by September 24, 2021. (Am. Compl. ¶¶ 29, 46, 53.) It further alleges

that in the September 21, 2021 letter, Northwell indicated that it "determined that permitting

[Greene], as an unvaccinated team member, to report to [her] worksite that provides direct

patient care and/or has direct contact with the general public poses an unacceptable health and

safety threat to patients, co-workers, and visitors." (*Id.* ¶ 46.) It also alleges that Greene did not

receive the first dose of the COVID-19 vaccine by the required date. (*Id.* ¶ 55.)

Accordingly, as of September 24, 2021, Greene was not qualified for her position as an

Office Manager at Orlin & Cohen and Northwell. The Amended Complaint thus fails to state a

plausible Title VII religious discrimination claim. *See Haczynska*, 2024 WL 3178639, at *11

n.15; *D'Cunha*, 2023 WL 2266520, at *3. Because Greene was unqualified for her position, I

need not reach the question of whether the Amended Complaint sufficiently pleads

discriminatory intent so as to state a plausible Title VII religious discrimination claim.[17]

### b. *Title VII Failure-to-Accommodate Claim*

Defendants argue that the Amended Complaint does not plausibly allege a Title VII claim

for failure to accommodate Greene's religious beliefs because it lacks sufficient allegations of

the *prima facie* elements of a failure-to-accommodate claim: (1) that she held a bona fide

religious belief that conflicted with the vaccination requirement and (2) that she informed

Defendants of that belief in her accommodation request. (Defs. Br. at 9–10; *id.* at 10 n.5).[18]

---

[17] Even if the allegations of the Amended Complaint were to show that Greene was qualified for the position, the Amended Complaint would fail to sufficiently plead Defendants' intent to discriminate against Greene on the basis of her religious beliefs. The Amended Complaint does not allege any facts that raise even a minimal inference of Defendants' intent to discriminate against Greene on the basis of her religion. In fact, the Amended Complaint describes Defendants' vaccination requirement as "well-meaning" (Am. Compl. ¶ 56) and describes Defendants' rationale for Greene's termination as solely based on concerns about safety and violating New York State law—not about Greene's religious beliefs. For example, in the September 9, 2021 email to Greene, Rubensohn stated that the Healthcare Employer Defendants could not accept her religious exemption request because the Department of Health "has indicated . . . that we are unable to recognize any religious exemptions for healthcare employees." (*Id.* ¶ 40.) The September 21, 2021 letter from Northwell's human resources department also stated that Defendants "determined that permitting [Greene], as an unvaccinated team member, to report to [her] worksite that provides direct patient care and/or has direct contact with the general public poses an unacceptable health and safety threat to patients, co-workers, and visitors." (*Id.* ¶ 46.) The Amended Complaint also alleges that the vaccination requirement "resulted in Plaintiff's inability to continue employment at [Orlin & Cohen] *due to Defendants' hyperbolic and wholly unfounded fear of having Plaintiff in as an unvaccinated employee*." (*Id.* ¶ 56 (emphasis supplied).) The only allegations that suggest any animus towards Greene—the allegations that "Defendants were hostile to Plaintiff on the basis of her religious beliefs" (*id.* ¶ 57) and that Defendants "acted in a discriminatory manner when they rejected Plaintiff's religious accommodation" (*id.* ¶ 58)—are wholly conclusory. *Hamilton*, 3 F.4th at 91.

[18] Defendants also argue that Greene fails to state a *prima facie* claim because she was not qualified for her position. (Defs.' Br. at 8.) As discussed *supra* note 15, this element relates to a Title VII religious discrimination claim but is not an element courts analyze with respect to a

According to the Healthcare Employer Defendants—the sole defendants named on this claim—
even if the Amended Complaint did plead the elements of a *prima facie* Title VII religious
accommodation claim, the claim would be implausible because Greene's requested
accommodation, if granted, would have caused undue hardship to the Healthcare Employer
Defendants by requiring them to violate Section 2.61, thereby subjecting them to a Department
of Health penalty and posing an increased health and safety risk to other employees and patients.
(*Id.* 12–16.) Even assuming that Greene can sufficiently allege a *prima facie* case for a failure-to-
accommodate claim,[19] this claim is dismissed. Under a long line of opinions in this Circuit, the
religious accommodation that Greene sought—an exemption from the Healthcare Employer
Defendants' COVID-19 vaccination requirement while continuing to work in a public-facing
position—would have posed an undue hardship to the Healthcare Employer Defendants by
requiring them to violate the Department of Health's vaccination requirement set forth in Section
2.61.

　　　Title VII "requires employers to accommodate the religious practice of their employees
unless doing so would impose an undue hardship on the conduct of the employer's business."
*Groff*, 600 U.S. at 453–54. In *Groff*, the Supreme Court clarified that "undue hardship is shown
when a burden is *substantial in the overall context of an employer's business.*" *Id.* at 468

---

Title VII religious accommodation claim. Accordingly, I do not address this argument in my
analysis of Greene's claim for failure to accommodate.

[19] While Defendants argue that Greene fails to allege a sincere, religious belief, "the sincerity of
an individual's belief is a question of fact not proper for determination in a motion to dismiss."
*Beickert v. New York City Dep't of Educ.*, No. 22-cv-5265, 2023 WL 6214236, at *3 (E.D.N.Y.
Sept. 25, 2023). Further, "both the Supreme Court and the Second Circuit have cautioned courts
regarding their limited function when determining whether religious beliefs are protected
because defining what is a 'religious' belief or practice is more often than not a difficult and
delicate task." *Id.* (citing *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)).

(emphasis supplied). In so holding, the Supreme Court rejected lower courts' interpretation of a prior Supreme Court decision, *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), as having established a rule that an employer need only show that a religious accommodation posed "a *de minimus*" burden—*i.e.*, a burden that is "very small or trifling"—to establish "undue hardship." *Id.* at 468–69 ("We hold that showing 'more than a *de minimus* cost,' as that phrase is used in common parlance, does not suffice to establish 'undue hardship' under Title VII. *Hardison* cannot be reduced to that one phrase."). In determining whether a requested religious accommodation imposes a substantial burden on an employer in the overall context of its business, "courts must . . . take[] into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 470–71. An employer satisfies the "undue hardship" standard when it has shown that granting a religious accommodation "would result in substantial increased costs in relation to the conduct of its particular business." *Id.* at 470. *Groff* observed that "an accommodation's effect on co-workers may have ramifications for the conduct of the employer's business." *Id.* at 472. *Groff* further explained:

> Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. This distinction matters. Faced with an accommodation request like Groff's, it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary.

*Id.* at 473.

In *Groff*, a United States Postal Service ("USPS") employee sought a religious accommodation that would permit him not to work on Sundays, which required his coworkers to take over his Sunday mail delivery duties. *Id.* at 455–46. After clarifying the legal standard for

28

determining undue hardship, the Supreme Court vacated and remanded the case, holding that the Third Circuit erred in finding that permitting the plaintiff to avoid Sunday work would cause the USPS "undue hardship" by "impos[ing] on his coworkers, disrupt[ing] the workplace and workflow, and diminish[ing] employee morale." *Groff*, 600 U.S. at 456. The Supreme Court noted that the Third Circuit may have failed to account for possible accommodations that would not have imposed an undue hardship, including incentive pay to encourage co-workers to cover Sunday shifts and coordination with nearby USPS stations. *Id.* at 473.

The Second Circuit applied the clarified standard set forth in *Groff* for determining whether a religious accommodation would impose an undue hardship in *D'Cunha v. Northwell Health Systems*, where it recognized that Title VII does not require an employer to provide the specific religious accommodation that a plaintiff prefers if granting that specific accommodation would impose an undue hardship in the context of the employer's business. *See D'Cunha*, 2023 WL 7986441, at *2–3 (citing *We The Patriots I*, 17 F.4th at 292); *see also We The Patriots II*, 17 F.4th at 370.

The Second Circuit has held that if an "employee's work assignments mean that she qualifies as 'personnel'" under Section 2.61, "she is covered by the Rule and her employer must 'continuously require' that she is vaccinated against COVID-19." *We The Patriots II*, 17 F.4th at 370 (citing 10 N.Y.C.R.R. § 2.61); *see also D'Cunha*, 2023 WL 7986441, at *2–3.

 "Courts in this Circuit have repeatedly rejected discrimination claims that would require employers to violate Section 2.61 to accommodate a request for religious exemption or accommodation," finding that requiring an employer to violate this state law would pose an undue hardship on that employer. *Addonizio v. Nuvance Health*, No. 23-cv-1582, 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (collecting cases); *see D'Cunha*, 2023 WL 7986441, at

*2–3.[20] In *D'Cunha*, the Second Circuit affirmed one of these district court decisions by summary order. The plaintiff in *D'Cunha* was a medical resident who, like Greene, was employed by Northwell and was required to be vaccinated under both Section 2.61 and the parallel requirement imposed by Northwell. 2023 WL 7986441, at *1. The Second Circuit found that Northwell "could not have granted [the plaintiff's] religious-exemption request without violating [Section 2.61], exposing itself to potential penalties, and thereby suffering an undue hardship." *Id.* at *3. This ruling was consistent with the Second Circuit's decision in *We The Patriots*, which held that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *Id.* (quoting *We The Patriots I*, 17 F.4th at 292).[21]

The Second Circuit decided *We The Patriots I*, 17 F.4th 266, and clarified the opinion in *We The Patriots II*, 17 F.4th 368, before the Supreme Court decided *Groff*, 600 U.S. 447. But the

---

[20] *See also Booth v. N.Y. Presbyterian Hosp.-Behav. Health Ctr.*, No. 22-cv-10114, 2024 WL 1381310, at *4 (S.D.N.Y. Mar. 29, 2024); *St. Hillaire v. Montefiore Med. Ctr.*, No. 23-cv-4763, 2024 WL 167337, at *4 (S.D.N.Y. Jan. 16, 2024); *Moore v. Montefiore Med. Ctr.*, No. 22-cv-10242, 2023 WL 7280476, at *6 (S.D.N.Y. Nov. 3, 2023); *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 509 (S.D.N.Y. June 23, 2023); *Dennison v. Bon Secours Charity Health Sys. Med. Grp., P.C.*, No. 22-cv-2929, 2023 WL 3467143, at *5–6 (S.D.N.Y. May 15, 2023); *Shahid-Ikhlas v. N.Y. & Presbyterian Hosp., Inc.*, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023); *Riley v. N.Y.C. Health and Hosps. Corp.*, No. 22-cv-2736, 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023); *Marte v. Montefiore Med. Ctr.*, No. 22-cv-03491, 2022 WL 7059182, at *3–4 (S.D.N.Y. Oct. 12, 2022).

[21] In *D'Cunha*, the Second Circuit also relied on a prior summary order, *Lowman v. NVI LCC*, 821 F. App'x 29 (2d Cir. 2020), in which the Second Circuit ruled that an employer did not violate Title VII when it refused to hire an applicant who declined to provide his Social Security number because the employer's Social Security number disclosure requirement was "mandated by federal law" and the employer could not "depart from the policy to accommodate [the applicant] without suffering an undue hardship." *D'Cunha*, 2023 WL 7986441, at *3 (citing *Lowman*, 821 F. App'x at 32).

Second Circuit found in *D'Cunha* that its conclusion that Northwell had shown that it would experience undue hardship by granting an employee a religious exemption from Section 2.61's vaccination requirement was "consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like [Section 2.61] in this case, is both 'excessive' and 'unjustifiable.'" *D'Cunha*, 2023 WL 7986441, at *3 (citing *Groff*, 600 U.S. at 469).

In *D'Cunha*, the Second Circuit also acknowledged that the Northern District of New York, in *Dr. A*, 567 F. Supp. 3d 362, issued a September 14, 2021 preliminary injunction barring the enforcement of Section 2.61, but found that this preliminary injunction "does not alter our conclusion that undue hardship existed in this case because [Section 2.61] was still valid law during the injunction period." *Id.* at *3 n.3. Further, while Section 2.61 was repealed in 2023, the Second Circuit found that the repeal "does not change our analysis in the present case as the events at issue occurred in 2021." *Id.* at *3 n.4.

Here, the Amended Complaint alleges that the Healthcare Employer Defendants considered Greene's position as an Office Manager to be a public-facing role that would fall under Section 2.61's definition of "personnel." (*See* Am. Compl. ¶¶ 24, 46.) Greene does not dispute that her position fell under the definition of "personnel" in Section 2.61. (*See* Pl.'s Opp'n.) The Amended Complaint shows that Greene sought the same accommodation as those sought by the plaintiffs in *We The Patriots* and *D'Cunha*—namely, to remain in her position unvaccinated, which would have required the Healthcare Employer Defendants to violate Section 2.61. *See We The Patriots II*, 17 F.4th at 370; *D'Cunha*, 2023 WL 7986441, at *2–3.

If the Healthcare Employer Defendants had violated Section 2.61, they would have exposed themselves to penalties under New York Public Health Laws, including the loss of their

operating licenses. *See* N.Y. Pub. Health L. § 2806(1)(a)(1) ("A hospital operating certificate

may be revoked, suspended, limited or annulled . . . [if] the hospital has failed to comply with the

provisions of [Article 28] or rules and regulations promulgated thereunder"); N.Y. Pub. Health

L. § 12 ("[A]ny person who violates, disobeys or disregards any term or provision of this chapter

or of any lawful notice, order or regulation pursuant thereto for which a civil penalty is not

otherwise expressly prescribed by law, shall be liable to the people of the state for a civil penalty

. . . .); *see also Pastor v. Mercy Med. Ctr.*, No. 22-cv-07847, 2024 WL 3029118, at *5 (E.D.N.Y.

June 17, 2024) ("A violator of Section 2.61 could suffer stringent penalties, including loss of its

operating license.")

 The face of the Amended Complaint demonstrates that granting Greene an exemption

from the vaccination requirement would have caused the Healthcare Employer Defendants an

undue hardship because it would have required them to violate a state law, and face potential

penalties for doing so. *D'Cunha*, 2023 WL 7986441, at *1–2; N.Y. Pub. Health L. §§ 12,

2806(1)(a)(1). The Amended Complaint thus fails to state a Title VII claim for failure to provide

a religious accommodation.

 Greene argues that the Second Circuit in *D'Cunha,* 2023 WL 7986441, "got it wrong"

and "h[e]ld undue weight in interpreting *We The Patriots* as fatal to any claim in light of *Groff*[,

600 U.S. 447] and the necessary and obvious need for the end of the lawless [Department of

Health] Mandate *ab initio* and eventual abandonment of the [Department of Health]'s appeal and

enforcement efforts on the mandate itself." (Pl.'s Opp'n at 6.) Greene's arguments are

unpersuasive for the following reasons.

 ***First***, Greene argues that "Defendants claim that they were just following the law, but

given the [Department of Health]'s mandate already being struck down, only being held back

from implementation due to a stay, the Defendants duty to follow the law is paramount by
granting accommodations for religious reasons." (Pl.'s Opp'n at 4–5.) Greene does not cite any
authority or case in support of this assertion, but I understand this argument to reference that the
Department of Health was temporarily enjoined from enforcing Section 2.61 from September 14,
2021 to October 12, 2021, and that the Department of Health was then subject to a permanent
injunction enjoining it from enforcing Section 2.61 from October 12, 2021 to November 4, 2021,
when the Second Circuit vacated the injunction in *We The Patriots I*, 17 F.4th 266. *See Dr. A*,
2021 WL 4189533; *Dr. A.*, 567 F. Supp. 3d 362. Courts in this Circuit, including the Second
Circuit in *D'Cunha*, have repeatedly rejected the argument that Greene raises here: that
permitting an employee to remain in public-facing healthcare roles without vaccination against
COVID-19 would not result in an undue hardship for hospital employers because a district
court's preliminary injunction had enjoined New York State officials from enforcing Section
2.61. *See D'Cunha*, 2023 WL 7986441, at *3 n.3 (finding that "this [preliminary] injunction does
not alter our conclusion that undue hardship existed in this case because [Section 2.61] was still
valid law during the injunction period"); *see also Dennison v. Bon Secours Charity Health Sys.
Med. Grp., P.C.*, No. 22-cv-2929, 2023 WL 3467143, at *5 n.5 (S.D.N.Y. May 15, 2023);
*Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 511 (S.D.N.Y. 2023), *aff'd*, No.
23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024); *Lake v. HealthAlliance Hosp. Broadway
Campus*, No. 22-cv-656, 2024 WL 3226273, at *8 (N.D.N.Y. June 27, 2024); *Cagle v. Weill
Cornell Med.*, 680 F. Supp. 3d 428, 437 (S.D.N.Y. 2023). In *Dennison*, the district court
reasoned that, if a court's preliminary injunction of a state law permitted employers to ignore that
state law, "employers would be required to accurately predict the outcome of litigation in order
to avoid liability for discrimination on the one hand, or liability for violating state law on the

other." 2023 WL 3467143, at *5 n.5.[22] For the reasons set forth in *D'Cunha* and *Dennison*, the Northern District of New York's order preliminarily restraining the enforcement of Section 2.61 does not change the analysis that granting Greene's requested accommodation would have caused the Healthcare Employer Defendants an undue hardship. *See id.*; *D'Cunha*, 2023 WL 7986441, at *3 n.3.

 **Second**, Greene argues that "vaccination status does not merit workplace restrictions in healthcare facilities" because "[v]accinated and unvaccinated employees can each catch COVID-19 at substantially the same rates, and if they do, they will each have to quarantine and be temporarily removed from the workplace regardless of vaccination status." (Pl.'s Opp'n at 5.) Greene's disagreement with the policy New York adopted by enacting Section 2.61, however, is irrelevant to whether her accommodation request posed an undue hardship on the Healthcare Employer Defendants. At the time the Healthcare Employer Defendants denied Greene's accommodation request, Section 2.61 was a valid state law that Defendants were required to follow. *See D'Cunha*, 2023 WL 7986441, at *3 n.3.

 **Third**, Greene argues that Defendants could have taken other action short of terminating her employment, such as placing Greene on "unpaid leave . . . until [Section 2.61] was sorted out in Court." (Pl.'s Opp'n at 5.) Greene also argues that under *Groff*, "Defendants must prove

---

[22] Greene also notes that Section 2.61 was "struck down" by a New York Supreme Court in *Bassett*, 185 N.Y.S.3d at 585. (Pl.'s Opp'n at 5.) The court in *Bassett* issued its decision—finding that the Department of Health exceeded its authority in issuing Section 2.61—on January 13, 2023, long after the period of time in August and September of 2021 in which the Healthcare Employer Defendants considered and rejected Greene's exemption request. *See Bassett*, 185 N.Y.S.3d at 585. At the time that the Healthcare Employer Defendants considered Greene's request for a religious exemption from their vaccination requirement, the law was still in effect and the Healthcare Employer Defendants faced potential penalties for violating it.

their substantial hardship that placing Plaintiff on a non-front facing or unpaid leave position or telehealth, in accordance with the *See We The Patriots*." (*Id.*) This argument is unavailing.

In *Groff*, the Supreme Court reiterated that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Groff*, 600 U.S. at 473. The Amended Complaint refers to Greene's request interchangeably as both an "accommodation" and an "exemption" from the vaccination requirement. (Am. Compl. ¶¶ 36–39.) The only "accommodation" that Greene requested was to receive an "exemption" from the vaccination requirement and to "wear a mask, social distance and submit weekly COVID-19 tests if the exemption was granted." (*Id.* ¶ 38.) After the Supreme Court decided *Groff*, the Second Circuit reaffirmed that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer—in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated." *D'Cunha*, 2024 WL 7986441, at *3 (quoting *We The Patriots USA I*, 17 F.4th at 292.)[23]

The Amended Complaint does not allege that Greene was amenable to anything other than the specific accommodation she requested—continuing to perform her role while being exempt from the COVID-19 vaccination requirement. There are no factual allegations concerning her openness or qualifications for a role with the Healthcare Employer Defendants that did not fall within the definition of "personnel" covered by the COVID-19 vaccination

---

[23] At oral argument, counsel for Greene argued that Greene did not seek a "blanket exemption" from the vaccination requirement because Greene sought an "accommodation" during the period of time in which Section 2.61 was being litigated. (Oral Arg. at 19:15–19:45, Sept. 19, 2024.) Counsel acknowledged, however, that the Amended Complaint used the terms "exemption" and "accommodation" interchangeably, and that Greene sought to remain in her position while unvaccinated. (*Id.*) Further, the Amended Complaint does not allege that Greene only sought this exemption for a short period of time. (*See* Am. Compl.)

requirement. The Amended Complaint also does not allege that Greene's employment responsibilities could be performed remotely, or that she was open to such an accommodation. To the extent that the Healthcare Employers could have accommodated Greene's alleged religious belief by placing her in a remote position, courts in this Circuit have found that such an accommodation would result in an undue hardship on hospital defendants, especially in the context of the COVID-19 pandemic, because such employers would have to hire another employee to perform an employee's in-person duties. *See Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-v- 3085, 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024). Moreover, "an employer is not required to create a position to accommodate an employee's religious beliefs." *Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, No. 122-cv-10643, 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted*, 2023 WL 3626435 (S.D.N.Y. May 24, 2023); *see also Robinson v. Children's Hosp. Bos.*, No. 14-cv-10263, 2016 WL 1337255, at *8 (D. Mass. Apr. 5, 2016) (collecting cases).

*Fourth*, Greene argues that *We The Patriots I*, 17 F.4th 266, was "in conflict" with the standard set forth in *Groff* (Pl.'s Opp'n at 5), which provided that "undue hardship is shown when a burden is substantial in the overall context of an employer's business," 600 U.S. at 468. As the Second Circuit found in *D'Cunha*, however, the conclusion that a religious exemption from the COVID-19 vaccination requirement in September 2021 would constitute "undue hardship" for an employer under Title VII is "consistent with the Supreme Court's clarification of the 'undue hardship' standard in *Groff* because the burden placed on an employer from violating a state law, like [Section 2.61] in this case, is both 'excessive' and 'unjustifiable.'" *D'Cunha*, 2023 WL 7986441 at *3 (quoting *Groff*, 600 U.S. at 469). The Second Circuit's reasoning in *D'Cunha* is persuasive, especially because the potential penalties faced by the

Healthcare Employer Defendants for violating New York's Public Health Law are significant

and include loss of a hospital's operating license. *See* N.Y. Pub. Health L. § 2806(1)(a)(1).

*Fifth*, in the context of opposing Defendants' Motion to Dismiss her Title VII religious

accommodation claim, Greene "asks this court to find the [Department of Health] mandate null

and void *ab initio*." (Pl.'s Opp'n at 6.) This argument is entirely undeveloped in Greene's

briefing. Indeed, Greene does not explain whether she has standing to pursue such relief in light

of the fact that Section 2.61 has been repealed.[24] Nor does she state the basis on which the Court

should find Section 2.61 unlawful, other than her disagreement with the policy. (*Id.*) Where a

party refers to an issue in only "a perfunctory manner, unaccompanied by any effort at developed

argumentation, it must be deemed waived[]—or, more precisely, *forfeited*." *In re Demetriades*,

58 F.4th 37, 54 (2d Cir. 2023). For example, in *Genomma Lab USA, Inc. v. Carruitero*, the

Second Circuit found that an appellant had waived an argument because its brief "d[id] not

contain the applicable standard of review" and "neglect[ed] to apply the case law to facts to raise

an argument for reversing the district court's conclusions." No. 22-3109, 2023 WL 8520181, at

*2 (2d Cir. Dec. 8, 2023). Greene's argument on this issue is similarly "tantamount to an

invitation for [the Court] to scour the record, research any legal theory that comes to mind, and

serve generally as an advocate for [plaintiff]." *Id.* In counseled cases like this one, that is "simply

not [the] job" of the court. *Id.* By raising this argument in only a conclusory and perfunctory

manner, Greene has forfeited her ability to argue that Section 2.61 is unlawful *ab initio*.

---

[24] Moreover, as I discussed above, the Amended Complaint does not establish standing to seek
declaratory relief because it fails to allege any ongoing or future injury. *See supra* Discussion
Section II.

### c.   *Title VII Hostile Work Environment*

Defendants argue that the Amended Complaint fails to allege sufficient facts to support a Title VII hostile work environment claim. (Defs.' Br. at 17–18). As previously discussed, Greene does not respond to this argument, and I have deemed this claim abandoned. *See supra* Discussion Section III.

Even if Greene had not abandoned this claim, however, the Amended Complaint would fail to plead a plausible Title VII hostile work environment claim because it does not allege facts establishing that Greene's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of the [Greene]'s employment and create[d] an abusive working environment." *Littlejohn*, 795 F.3d at 320–21.

The Amended Complaint makes three allegations that appear to be an effort to support a hostile work environment claim: it alleges that "the employer Defendants . . . caus[ed] a hostile work environment" (Am. Compl. ¶ 79); that "Defendants were hostile to Plaintiff on the basis of her religious beliefs" (*id.* ¶ 57); and that "Defendants acted in a discriminatory manner when they rejected Plaintiff's religious accommodation and analyzed her request and found that it created an undue hardship" (*id.* ¶ 58). Each of these allegations, however, is wholly conclusory, and such conclusory allegations are not taken to be true. *Hamilton*, 3 F.4th at 91. The Amended Complaint fails to assert any factual allegations which could support these conclusions. For example, other than the allegation that Greene was terminated from her employment, the Amended Complaint fails to allege that the Healthcare Employer Defendants engaged in any other purportedly discriminatory conduct, let alone the frequency of that conduct. *Cf. Littlejohn*, 795 F.3d at 321 ("[T]he conduct complained of must be severe or pervasive enough that a

reasonable person would find it hostile or abusive, and the [plaintiff] must subjectively perceive the work environment to be abusive."); *see also Rasmy*, 952 F.3d at 387 (same). Without supporting factual allegations, the "naked assertions" that Defendants terminated Greene in a "discriminatory manner" and that Defendants were "hostile" are insufficient to state a Title VII claim against the Healthcare Employer Defendants for a hostile work environment based on a religious discrimination. *Iqbal*, 556 U.S. at 678.

### C. NYSHRL and NYCHRL Claims

Defendants argue that Greene has failed to plead plausible claims under either the NYSHRL or the NYCHRL for many of the same reasons that she has failed to plead a Title VII claim. (*See e.g.*, Defs.' Br. at 6 n.4, 16.) I have determined that Greene has abandoned these claims and they are therefore dismissed with prejudice. *See supra* Discussion Section III. Even if Greene had not abandoned these claims, I would decline to exercise supplemental jurisdiction over them.

A district court "may decline to exercise supplemental jurisdiction over a claim [where it] has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Chinniah v. FERC*, 62 F.4th 700, 703 (2d Cir. 2023).

Here, the Amended Complaint fails to state any federal claims and the federal claims are therefore dismissed. *See supra* Discussion Section IV(B). Greene has alleged that the Court has supplemental jurisdiction over the NYSHRL and NYCHRL claims under 28 U.S.C. 1367(a) but has not alleged that the Court has original diversity jurisdiction over these claims under 28

U.S.C. § 1332(a). (*See* Am. Compl. ¶¶ 4–5.)[25] Accordingly, as this case is in the early stages of

litigation, I decline to exercise supplemental jurisdiction over Greene's claims under the

NYSHRL and NYCHRL.[26] *Tang*, 2023 WL 2229366, at *3; *Klein*, 464 F.3d at 262; *see also*

*Haczynska*, 2024 WL 3178639, at *14 (declining to exercise supplemental jurisdiction over

NYSHRL and NYCHRL claims after dismissing plaintiff's Title VII religious discrimination

claim due to failure to comply with hospital's vaccination requirement and collecting similar

cases).

## CONCLUSION

For the reasons addressed above, Defendants' Motion to Dismiss (ECF No. 19) is granted

in its entirety. Greene's claims for declaratory relief are dismissed without prejudice for lack of

---

[25] Nor has Greene alleged sufficient facts to establish complete diversity between the parties. The Amended Complaint alleges that Greene "was a resident of the State of New York, at all relevant times complained of herein and is currently a resident of the State of Florida," that Passet, Rubensohn, and Hayes are residents of New York, and that Northwell and Orlin & Cohen are both entities formed under the law of New York and headquartered in New York. (Am. Compl. ¶¶ 9–16.) These allegations fail to sufficiently establish the citizenship of Greene or any of the Individual Defendants because they concern residence, and it is well-established that allegations of "residence alone [are] insufficient to establish domicile for jurisdictional purposes." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019); *accord RainMakers Partners LLC v. NewSpring Cap., LLC*, No. 23-899, 2024 WL 1846321, at *2 n.1 (2d Cir. Apr. 29, 2024); *Canouse v. Protext Mobility, Inc.*, No. 22-1335, 2023 WL 3490915, at *1 (2d Cir. May 17, 2023). Further, the Amended Complaint's allegations concerning the state of incorporation and location of Orlin & Cohen's headquarters are insufficient to establish its citizenship for the purposes of diversity jurisdiction because Orlin & Cohen is an LLP. "For an LLP, citizenship depends on the citizenship of its partners: an LLP is treated as a citizen of every state of which its partners are citizens." *Roche Cyrulnik Freedman LLP v. Cyrulnik*, 582 F. Supp. 3d 180, 187 (S.D.N.Y. 2022). Thus, the Amended Complaint has failed to establish that Greene's citizenship is diverse from the citizenship of each and every defendant, as required for jurisdiction under 28 U.S.C. § 1332(a).

[26] At the September 19, 2024 conference, Greene highlighted a recent opinion of the Supreme Court of Queens County discussing the legal standards applicable to Greene's NYCHRL claim. *See In re: Halikas v. N.Y.C. Dep't of Educ.*, Index No. 700285/2023 (Queens Cnty. Sup. Ct., Aug. 2, 2024). (Oral Arg., Sept. 19, 2024.) I do not address this decision because I decline to exercise supplemental jurisdiction over the NYCHRL claim.

Article III standing. Greene's Title VII religious discrimination and hostile work environment claims are dismissed with prejudice because Greene abandoned these claims, and in the alternative, because Greene failed to plausibly allege either claim under Rule 12(b)(6). Greene's Title VII failure-to-accommodate claim is dismissed with prejudice under Rule 12(b)(6) for failure to state a claim. Greene's claims for religious discrimination under the NYSHRL and NYCHRL are dismissed with prejudice because Greene has abandoned these claims.

The Amended Complaint is dismissed. The Clerk of Court shall enter judgment and close this case.

Dated: Central Islip, New York
September 25, 2024

_/s/ Nusrat J. Choudhury_
NUSRAT J. CHOUDHURY
United States District Judge